UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------x

 UNITED STATES OF AMERICA,

                    -against-

 KENT BULLOCH,

                         Defendant.

------------------------------------x

**MEMORANDUM & ORDER**
20-CR-181 (EK)(PK)

ERIC KOMITEE, United States District Judge:

           In March 2020, during the Covid-19 pandemic, the
Secretary of Health and Human Services designated protective
face masks "scarce materials" under the Defense Production Act
of 1950.  This made it a misdemeanor to "accumulate" those masks
"for the purpose of resale at prices in excess of prevailing
market prices."  50 U.S.C. § 4512.

           Shortly thereafter, appellant Kent Bulloch
communicated with an undercover federal agent.  Bulloch proposed
that the agent purchase one million KN-95 masks, which the agent
could then resell at above-market prices (while kicking profits
back to Bulloch).  For this conduct, Bulloch was arrested,
prosecuted and — after a three-day jury trial before Magistrate
Judge Kuo — convicted of conspiring to violate Section 4512.

           He now appeals his conviction.  He argues that Judge
Kuo improperly instructed the jury on the correct interpretation
of Section 4512.  He further argues that if Judge Kuo's

interpretation of Section 4512 prevails, the provision is unconstitutionally vague.  For the reasons outlined below, these arguments lack merit.  The conviction is therefore affirmed.

## I.  Background

### A.  The Offense Conduct

On March 18, 2020, the President issued Executive Order 13909.  85 Fed. Reg. 16227 (Mar. 23, 2020).  The Order invoked a provision of the Defense Production Act of 1950 ("DPA"), which permits the President to designate items as "scarce . . . material[s] essential to the national defense" during a national emergency.  50 U.S.C. § 4511(b).  The Order also authorized the Secretary of Health and Human Services to identify "health and medical resources" that qualified as scarce materials.  85 Fed. Reg. at 16227.  On March 25, the Secretary concluded that N-95 and similar protective face masks so qualified.  *See* 85 Fed. Reg. 17592, 17592 (Mar. 30, 2020).

The following month, Bulloch contacted an undercover FBI agent.[1]  Bulloch proposed that the agent purchase one million KN-95 masks — at $3.80 per mask — from a facility in California.  Trial Tr. 49:23-51:4, 87:1-2; GX 4.  The undercover agent would first forward the "total purchase price" to an escrow account that Bulloch controlled.  Trial Tr. 51:8-22; 71:1-13.  Bulloch

---

[1] Because Bulloch appeals a jury conviction, the Court recounts the facts in the light most favorable to the government.  *United States v. Ferguson*, 676 F.3d 260, 268 (2d Cir. 2011).

would purchase the masks, and then ship them to the undercover agent. *See* GX 102T at 19. The agent would resell them at $5.70 per mask (a fifty percent markup). Trial Tr. 84:23-25. The resale revenues would flow back into Bulloch's escrow account, with Bulloch and his co-conspirator taking ten percent of the profits. *Id.* at 81:8-10, 83:20-24.[2]

## B. Procedural History

Predictably, this scheme was never consummated. Federal agents arrested Bulloch in California on April 27. A few weeks later, prosecutors charged him via information with misdemeanor price-gouging conspiracy in violation of Section 4512.

In their proposed jury instructions, the parties disputed the meaning of the word "accumulate" in Section 4512. The government took the position that "accumulate" simply means to "gather, collect, or accrue." Gov. Req. to Charge 15, ECF No. 15. Bulloch argued that one could only "accumulate" scarce materials by gathering them "over a period of time" and "with[olding] [them] from the market for . . . long enough to

---

[2] The record is not perfectly clear as to the mechanics of the contemplated transaction. At times, Bulloch seems to portray himself as a broker or agent, such as when he "highly recommend[s]" that the undercover agent place "the total purchase price into [Bulloch's] escrow [account]." Trial Tr. 51:9. Elsewhere, Bulloch speaks of "tak[ing] possession" of the masks himself, perhaps suggesting that he would be the initial purchaser. GX 102T at 19. No party argues that the evidence of "accumulation" was insufficient on this basis, and Bulloch's conviction for conspiracy renders this question largely academic.

cause or allow their price to rise." Def.'s Req. to Charge 13, ECF No. 44.

Judge Kuo adopted the government's formulation. Final Jury Instr. 24, ECF No. 55-1. Bulloch then moved to dismiss the information on the ground that, as interpreted by Judge Kuo and the government, Section 4512 was unconstitutionally vague. Def.'s Mot. to Dismiss Information 1, ECF No. 55. Judge Kuo denied the motion. Order Den. Dismissal, ECF No. 64.

After a three-day trial, the jury convicted Bulloch. Judge Kuo sentenced Bulloch to two years of probation and a $1,000 fine. This appeal followed.

## II.    Discussion

### A.    The Meaning of "Accumulate" in Section 4512

Bulloch's first claim on appeal is that Judge Kuo improperly instructed the jury as to the definition of "accumulate" in Section 4512.[3] When a defendant objects to a jury instruction that was based on an interpretation of a federal statute, the Court's review is *de novo*. *See United*

---

[3] Bulloch styles his appeal as a challenge to the sufficiency of the trial evidence. Def. Br. 11, ECF No. 91. He argues that Judge Kuo improperly defined the word "accumulate" for the jury, and that under the correct interpretation of that word, the evidence at trial was not enough to convict him. But this argument hinges on whether Judge Kuo's reading of Section 4512 was correct. Indeed, Bulloch never argues that the evidence against him was insufficient even under Judge Kuo's reading of the statute. So, the predicate issue is whether Judge Kuo properly interpreted Section 4512 for purposes of jury instruction. The Court therefore frames Bulloch's appeal as a jury-instruction challenge.

*States v. Coplan*, 703 F.3d 46, 87 (2d Cir. 2012) (preserved challenges to jury instructions reviewed *de novo*); *United States v. Aleynikov*, 676 F.3d 71, 76 (2d Cir. 2012) (interpretation of a federal statute reviewed *de novo*).[4]

Here, Bulloch asserts that a person only "accumulates" scarce materials by gathering and withholding them from the market for "a period of time."[5]  Def. Br. 15.  On this view, Bulloch could not have violated Section 4512, because the evidence did not show that he (or a co-conspirator) contemplated keeping the masks out of circulation.  Rather, the government proved only that he arranged bulk purchases of masks, which he planned to deliver "immediately" to his investors for resale to the public.  Trial Tr. 32:12-33:2; *see also* Def. Br. 11.

Because Judge Kuo's reading of "accumulate" is consistent with the text and statutory history of Section 4512, the Court finds no error in the jury instructions.

1.    <u>The Text of Section 4512</u>

Statutory interpretation begins with the text.  *See Chai v. Comm'r of Internal Revenue*, 851 F.3d 190, 217 (2d Cir.

---

[4] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

[5] Bulloch's briefing never specifies how long this "period of time" must be.  In the proceedings below, his proposed jury instruction stated (rather unhelpfully) that a person must hold scarce materials off the market for "long enough to cause or allow" the price of those materials to rise.  Def.'s Req. to Charge 13.  But of course, prices can change day-to-day, hour-to-hour, or even faster, so this "long enough" qualifier hardly sheds more light on the issue.

2017).  If the statutory language is clear, the analysis "ends there." *Id.*  The clarity of the language is "determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 423 (2d Cir. 2005).

In relevant part, Section 4512 reads as follows:

> In order to prevent hoarding, no person shall accumulate (1) in excess of the reasonable demands of business, personal, or home consumption, or (2) for the purpose of resale at prices in excess of prevailing market prices, materials which have been designed by the President as scarce materials or materials the supply of which would be threatened by such accumulation.

50 U.S.C. § 4512.

a.   The Word "Accumulate"

The plain meaning of the word "accumulate" supports Judge Kuo's interpretation of Section 4512.

When a statutory term is undefined, a court may consult dictionaries to determine its plain meaning.  *See Cont. Terminals, Inc. v. Waterfront Comm'n of N.Y. Harbor*, 782 F.3d 102, 109 (2d Cir. 2015).  Here, authoritative dictionaries from the relevant period define "accumulate" to mean "collect" or "gather." *See, e.g.*, *Webster's New Int. Dictionary* 16 (2d ed. 1945) ("[T]o collect or bring together"); *Webster's Third New Int. Dictionary* 13 (1961) ("[T]o heap up into a mass; pile up;

amass; collect; gather"); *The Am. Heritage Dictionary of the English Language* 12 (3d ed. 1992) ("[T]o gather or pile up"); *see also* Accumulate, *Oxford English Dictionary* (last accessed online Oct. 9, 2024) ("To heap up in a mass, to pile up . . . to amass, collect, or accrue").[6]  None of these dictionaries states that one can only "accumulate" something over a given time period.  And this aligns with ordinary usage.  For instance, it would make equal sense to describe a reservoir as accumulating raindrops over five years, and an awning as accumulating them over five seconds.

Bulloch's preferred sources do not undermine this consensus view.  An online dictionary he cites does not *require* that accumulation occur over a given timeframe.  *See* Accumulate, *Dictionary.com* (last accessed Oct. 9, 2024) ("To gather or collect, *often* in gradual degrees") (emphasis added).[7]  Another says accumulation happens "over a period of time," but provides no indication of how long the period must be.  Accumulate, *Collins Dictionary* (last accessed Oct. 9, 2024).[8]  Bulloch identifies only one source – the *Cambridge Advanced Learner's Dictionary & Thesaurus* – that says "accumulate" means "to collect a large number of things over a *long period of time*."

---

[6] https://www.oed.com/dictionary/accumulate_ v.

[7] https://www.dictionary.com/browse/accumulate.

[8] https://www.collinsdictionary.com/us/dictionary/english/accumulate.

Accumulate, *Cambridge Dictionary* (last accessed Oct. 9, 2024) (emphasis added).[9]

The fact that one dictionary supports Bulloch's view does not render Section 4512's use of "accumulate" ambiguous. "Most cases of verbal ambiguity in statutes involve . . . a selection between accepted alternative meanings shown as such by *many* dictionaries." *MCI Telecommunications Corp. v. Am. Tel. & Tel. Co.*, 512 U.S. 218, 227 (1994) (emphasis added). Here, Bulloch produces only one dictionary to counter the weight of authority behind Judge Kuo's reading. Moreover, other Cambridge dictionaries do not mention a lengthy holding period in their definitions of "accumulate." *See* Accumulate, *Cambridge Dictionary* (last accessed Oct. 9, 2024) (collecting definitions from different Cambridge dictionaries).[10]  The fact that even Bulloch's preferred publisher has not consistently endorsed the primacy of his proposed definition makes his position even more precarious. *See Guardsmark, LLC v. Nat'l Labor Relations Bd.*, 475 F.3d 369, 379 (D.C. Cir. 2007) (rejecting appellee's reliance on a narrow definition of "fraternize" in the *Compact Oxford English Dictionary*, and noting that a more capacious definition appeared in the full version of that dictionary).

---

[9] https://dictionary.cambridge.org/us/dictionary/english/accumulate.
[10] https://dictionary.cambridge.org/us/dictionary/english/accumulate.

So, Bulloch's interpretation of "accumulate" in Section 4512 is not the best reading of that term. A person can accumulate items over any timeframe, not just the amorphous timeframe urged by Bulloch.[11]

b.    Section 4512 As a Whole

The statutory context in which the word "accumulate" appears does not justify deviating from the plain meaning of that word.

Most importantly, the text of Section 4512 contains no temporal limitation on the word "accumulate." The section does not say — to use the language from Bulloch's proposed jury instruction — that a person shall not "accumulate *for long enough to influence market prices* . . . ." Def.'s Req. to Charge 13. It simply bars "accumulation" — over however long a period — for the purpose of selling at a price higher than the prevailing market price. In his attempt to graft a holding period onto the statute, Bulloch would "insert convenient language to yield [his] preferred meaning." *Borden v. United States*, 593 U.S. 420, 436 (2021). But "statutory construction does not work that way." *Id.*

---

[11] To illustrate the imprecision of Bulloch's proposed "period of time" standard, consider that Bulloch told his co-conspirator that he would "take possession" of the masks and then personally load them onto a truck in California. GX 102T at 16, 19. It would certainly have taken a noticeable "period of time" to load one million KN-95 masks. Would that "period of time" be long enough to trigger Section 4512 under Bulloch's reading? What about the "period of time" during which the masks were being transported across the country? Bulloch never says.

To justify his proposed reading of the word "accumulate," Bulloch turns to Section 4512's preface: "In order to prevent hoarding." In his view, this prefatory language indicates that "accumulating" should be read as a synonym for "hoarding," which (according to Bulloch) means gathering items and keeping them off the market for some period of time. Def. Br. 13-14.

Bulloch's reading clashes with the canon of meaningful variation. "In a given statute, the same term usually has the same meaning and different terms usually have different meanings." *Pulsifer v. United States*, 601 U.S. 124, 149 (2024). To be sure, this canon is a "defeasible" one. *Id.* But here, Bulloch argues that Congress used two different words — in the very same sentence — to effectively mean the same thing. He never explains why Congress would have made that strange semantic choice.

Furthermore, Bulloch's reading puts more weight on Section 4512's prefatory language than it can bear. A prefatory clause "does not limit or expand the scope of the operative clause." *District of Columbia v. Heller*, 554 U.S. 570, 578 (2008). It just "announces a purpose," which the remedy prescribed by the statute's operative language may exceed.[12] *Id.*

---

[12] Consider the traditional example: "For the purpose of stamping out rabies, dogs must be muzzled." Readers are taught not to consider this

at 577-78.  So, the fact that Section 4512's prefatory clause
targets "hoarding" does not mean the provision *only* prohibits
"hoarding," however defined.[13]  Bulloch insists that a court may
still consider a prefatory clause to resolve an ambiguity in the
operative clause.  Def. Reply Br. 9-11, ECF No. 94.  This is
correct.  *See Heller*, 554 U.S. at 578.  But as already
discussed, the plain meaning of "accumulate" in Section 4512's
operative clause is not particularly ambiguous.  Bulloch's
invocation of the preface would therefore create more ambiguity
than it would resolve.

        In addition to the prefatory clause, Bulloch focuses
on the fact that Section 4512 bans accumulation of materials
"the supply of which would be threatened by such accumulation."
50 U.S.C. § 4512.  This language, he argues, means that
Section 4512 only prohibits *some* accumulation — namely,
accumulation that threatens the "supply" of scarce materials.
And he claims that such "supply" is only threatened by

_____

provision void once the government declares that rabies has been extirpated.
Rather, the statute would properly be read to mean that dogs "must continue
to be muzzled so long as the statute is in force, even though rabies has been
stamped out."  W. Nembhard Hibbert, *Jurisprudence* 95 (1932); *see also* A.
Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 220 (2012)
(same example).
        [13] Indeed, Section 4512 would still prohibit Bulloch's price-gouging
conduct even if Bulloch's interpretation of the prefatory clause were
correct.  As Judge Kuo pointed out below, widespread resale of scarce
materials at above-market prices would push consumers to panic-buy for fear
of ever-rising prices.  *See* Ord. Den. Dismissal 9.  This would encourage the
same "hoarding" that Bulloch — citing the prefatory clause — says is the
principal target of Section 4512.

withholding scarce materials from the market for some period.
Def. Br. 16-17.

    This argument fails too.  The language Bulloch cites
describes a distinct category of materials that fall within the
purview of Section 4512.  To trigger the Section, the President
must designate items "as scarce materials *or* materials the
supply of which would be threatened by such accumulation."  50
U.S.C. § 4512 (emphasis added.).  So, the cited language does
not say that Section 4512 only applies to materials "the supply
of which would be threatened by such accumulation."  Rather, it
describes the designations required to trigger the Section.  And
there is no dispute here that the President's designation put
Section 4512 into operation.

    Moreover, as Judge Kuo pointed out, Bulloch's actions
(as established by the trial evidence) *did* foreseeably threaten
supply, at least as that term is used in Section 4512.  Congress
did not use "supply" in the ordinary economic sense of the
"quantity of a commodity that producers wish to sell" at a given
price.  *See* Supply and Demand, *Encyc. Brittanica Online* (last
accessed Oct. 17, 2024).[14]  It is (at best) unclear why
downstream hoarding would impair upstream production or sales by
producers.  Instead, as used in Section 4512, "supply" appears
to refer to the quantity of a commodity that consumers can

---

[14] https://www.britannica.com/money/supply-and-demand.

reliably purchase.  And price-gouging, even without a holding period, can reduce the reliably available quantum of a commodity.  If speculators are buying up scarce materials to resell them at higher prices, then those materials could become unaffordable to many citizens.

Thus, the statutory context does not justify Bulloch's reading of "accumulate" in Section 4512.

c.  The DPA's Stated Findings and Purpose

A court does not read a statutory provision in isolation, but rather "look[s] to the provisions of the whole law, and to its object and policy." *United States v. Pacheco*, 225 F.3d 148, 154 (2d Cir. 2000).  Invoking this rule, Bulloch highlights the DPA's "[d]eclaration of policy," which begins with Congress's "finding" that "the security of the United States is dependent on the ability of the domestic industrial base to supply materials and services . . . to prepare for . . . natural or man-caused disasters."  50 U.S.C. § 4502(a)(1).  In his view, this policy declaration supports interpreting Section 4512 as only penalizing conduct that "removes scarce materials from the market and thereby reduces the available supply of those materials."  Def Br. 19.

Bulloch misinterprets Section 4502(a)(1)'s use of "supply."  The Congressional finding he invokes is one of eight findings set out in Section 4502(a).  It speaks to the nation's

industrial ability to produce scarce materials.  That need is addressed in, for example, Section 4517, which empowers the President to "provide appropriate incentives to develop, maintain, modernize, restore, and expand" certain "productive capacities."  50 U.S.C. § 4517.  But the finding that Bulloch invokes does not inform the proper reading of Section 4512, which is about the ease with which citizens can access scarce materials, not the ease with which producers can manufacture them.

And even if Bulloch's reading of the policy statement were correct, his argument would still fail.  Bulloch basically proposes a narrowed reading of Section 4512 based on a vague declaration of legislative policy.  But a court may not elevate general statements of purpose over clear statutory text.  *See Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 303-04 (2006) ("general" statutory goals of the Individuals with Disabilities Education Act insufficient to override "unambiguous" text); *Penn. Dep't of Corrections v. Yeskey*, 524 U.S. 206, 211-12 (1998) (making a similar point in the context of the Americans with Disabilities Act).  Thus, the DPA's policy declaration cannot trump the text of Section 4512, which by its plain terms prohibits the behavior for which Bulloch was convicted.

2.    The Statutory History of Section 4512

Because the text of Section 4512 is clear, there is no need to delve into statutory history. *See Chai*, 851 F.3d at 217; *see also Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004) ("The starting point in discerning congressional intent is the existing statutory text, and not the predecessor statutes."). However, for the sake of completeness, the Court briefly addresses Bulloch's statutory history arguments.

Bulloch correctly notes that Section 4512 evolved from the anti-hoarding provisions of the Lever Act of 1917. *See* H.R. Rep. No. 3042, *as reprinted in* 96 Cong. Rec. H14120, H14129 (Sept. 1, 1950) (conference report on the DPA). The Lever Act defined "hoarding necessaries" to include situations in which necessaries were "withheld, whether by possession or under any contract or arrangement, from the market by any person for the purpose of unreasonably increasing or diminishing the price." 40 Stat. 276, 278 (1917). Drawing on this history, Bulloch argues that the Lever Act only punished defendants who "withheld" materials from the market for some period. In his view, Section 4512 should be equally limited.

But Bulloch's approach ignores yet another canon of construction. "[I]f Congress amends or reenacts a provision, a significant change in language is presumed to entail a change in meaning." *Arangure v. Whitaker*, 911 F.3d 333, 343 (6th Cir.

15

2018) (citing A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* § 40 (2012)).  To illustrate the point, consider *United States v. Wells*, 519 U.S. 482 (1997).  There, the Supreme Court interpreted a federal statute that prohibited making false statements to a federally insured bank. 519 U.S. at 484.  The statute consolidated thirteen older provisions banning false statements.  *Id.* at 492.  The Court found that the consolidated statute did not require that a challenged statement be materially false.  *Id.* at 484.  As part of its reasoning, the Court emphasized that three of the statute's predecessor provisions "had contained express materiality requirements and lost them in the course of consolidation."  *Id.* at 492-93.  The "most likely inference" from this omission was that Congress did not "intend[] materiality to be an element of [the consolidated statute]." *Id.* at 493.  That is, the Court presumed that a significant omission necessarily "entail[ed] a change in meaning."

        Here, the drafters of Section 4512 did not carry over the Lever Act's "withheld . . . from the market" language. Nor did they carry over the word "hoarding" into Section 4512's operative language.  Instead, they used a different word: "accumulate."  And as already discussed, the plain meaning of that term does not require that a defendant withhold scarce materials from the market for any given period.  Because

Congress dropped the "withheld" language when it drafted Section 4512, the presumption is that Congress did not intend for that Section to require a holding period to trigger criminal liability.  So, Bulloch's references to statutory history are unavailing.

*      *      *

To summarize, none of the plain language of Section 4512, the broader context in which it appears, or the DPA's statutory history supports Bulloch's reading of "accumulate." On the contrary, they buttress the government's argument that Section 4512 prohibits "gathering" (that is, "accumulating") scarce materials (1) to an unreasonable extent, or (2) for an impermissible purpose.  In Bulloch's case, that means that Section 4512 bans collecting masks for purposes of resale at above-market prices, even if Bulloch did not withhold those masks from the market for any given period.[15]  Accordingly, Judge Kuo's jury instructions were not erroneous.

---

[15]  Although the parties do not raise the issue, it bears noting that Judge Kuo's interpretation of Section 4512 does not transform the provision into a price control.  Congress made clear that, absent express legislative authorization, nothing in the DPA should be read to impose such a control. *See* 50 U.S.C. § 4514(a) ("No provision of this chapter shall be interpreted as providing for the imposition of wage or price controls without the prior authorization of such action by a joint resolution of Congress.").  Section 4512 comports with this interpretive requirement because it bars accumulation of masks only for the *purpose* of resale at above-market prices. *Id.* § 4512.  It does not prevent market prices from rising in the ordinary course of commerce.  Thus, for example, wholesalers and retailers with existing inventories can charge above-market prices without violating Section 4512, so long as they did not have the illicit price-gouging purpose in mind when they originally obtained (or accumulated) that inventory.  In

B.    **The Vagueness Challenge**

"The void for vagueness doctrine provides that a conviction is invalid under the Due Process Clause if the statute . . . fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Vasquez v. Garland*, 80 F.4th 422, 435 (2d Cir. 2023).  Unless the statute governs conduct protected by the First Amendment, courts "assess vagueness challenges to a statute as applied, rather than facially."  *Id.; see also United States v. Rybicki*, 354 F.3d 124, 131 (2d Cir. 2003) (en banc) (acknowledging dispute among Justices as to nature of review for facial vagueness, and reaffirming that "outside the First Amendment context, vagueness challenges will be considered only as applied").

Vagueness challenges are subject to *de novo* review. *See Arriaga v. Mukasey*, 521 F.3d 219, 221 (2d Cir. 2008) (constitutional challenges to a statutory provision reviewed *de novo*); *Aleynikov*, 676 F.3d at 76 (challenges to sufficiency of charging instrument reviewed *de novo*).

---

this way, the price of scarce goods can rise even after the President designates a given item as scarce.  Likewise, a retailer who enters a long-term contract to buy a given number of masks every month can decide later to raise prices.  The retailer presumably will not have consummated the contract for the illicit purpose that Section 4512 prohibits.

Bulloch's vagueness arguments are ultimately unpersuasive.

1.    The Clarity of "Accumulate"

Bulloch alleges that – as interpreted by Judge Kuo – the term "accumulate" in Section 4512 does not give a "person of ordinary intelligence fair notice of what is prohibited."  Def. Br. 25-26.  The thrust of Bulloch's claim is that an ordinary reader would not understand Section 4512 to ban activities that merely involve "gathering" scarce materials without "hoarding" them (i.e., holding them for a given period).

The preceding textual analysis, *supra* Part II.A, forecloses Bulloch's argument.  As already discussed, both the plain meaning of "accumulate" and the broader context of Section 4512 indicate that no holding period is required to violate the law.  Moreover, neither the operative nor prefatory language of Section 4512 mentions a holding period of any kind. Thus, Bulloch is effectively arguing that a reader of ordinary intelligence would read Section 4512 as incorporating a temporal requirement that (1) does not inhere in the ordinary meaning of "accumulate" and (2) never appears in the statutory text itself. This argument strains plausibility.

Accordingly, the word "accumulate" in Section 4512 – as construed by Judge Kuo – is not unconstitutionally vague.[16]

2.    The Clarity of "Prevailing Market Prices"

Bulloch also argues that the phrase "prevailing market prices" in Section 4512 is unconstitutionally vague, because the statute provides no "explicit standards" for determining the market price of a scarce material.  Thus, in the way it was applied to him, Section 4512 is prone to arbitrary and selective enforcement.  Def. Br. 26.

The vagueness doctrine does not require that a statute provide "perfect clarity and precise guidance."  *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989).  Instead, a statute need only establish "sufficiently clear standards to minimize the risk of arbitrary enforcement."  *Thibodeau v. Portuondo*, 486 F.3d 61, 67 (2d Cir. 2007).  A statute that provides "objective criteria" and "meaningful guidelines" for ascertaining criminal liability will not run afoul of the Due Process Clause.  *Id.* at 68.

---

[16] In fact, Bulloch's preferred reading raises more vagueness issues than it resolves.  Bulloch proposes that Section 4512 only prohibits withholding masks from the market for an unspecified "period of time." Leaving aside that the "period of time" requirement appears nowhere in the statutory text, Bulloch never specifies how long of a withholding period is "too long."  Thus, under Bulloch's approach, future defendants will have little to no guidance on when they have held scarce materials for long enough to fall afoul of Section 4512.  By contrast, Judge Kuo's reading recognizes a simpler rule: One may not accumulate scarce materials for the purpose of resale at above-market prices, no matter how long one withholds those materials from the market.

The phrase "prevailing market price" is "sufficiently clear" to satisfy the Due Process Clause.  An item's market price does not depend on the "arbitrary whims of police or juries." *Thibodeau*, 486 F.3d at 69.  Instead, one can ascertain a market price by reference to objective data.  *See, e.g., Grandon v. Merrill Lynch & Co., Inc.*, 147 F.3d 184, 189 (2d Cir. 1998) (explaining that, at that time, the "prevailing market price" of a security was calculated by reference to the "price at which dealers trade with one another").  That is exactly what the government introduced here.  At trial, the government called two expert witnesses to evaluate purchasing data from major hospital systems in and around New York City during March and April of 2020.  The witnesses opined that the "prevailing market price" of an N-95 mask — which would likely be higher than the price of a KN-95 mask — during this timeframe was between fifty cents and one dollar, well below Bulloch's proposed resale price of $5.70.  Trial Tr. 128:11-16, 157:16-25, ECF No. 78.

To be sure, pinpointing a market price can be difficult.  Prices can change in seconds.  And there may be more than one reasonable method to identify the "prevailing" price of a given product.  But the inquiry remains rooted in ascertainable data, and the fact that the government may analyze that data "by several methods does not render [a statute] vague." *See United States v. Kaylor*, 877 F.2d 658, 661 (8th

Cir. 1989); *see also Tuilaepa v. California*, 512 U.S. 967, 977 ("[D]ifficulty in application is not equivalent to vagueness."). Because Bulloch's guilt was determined by reference to objective data, not caprice, Section 4512 was not applied in an unconstitutional manner.

As a final note, the vagueness doctrine does not "preclude the use of ordinary terms to express ideas which find adequate interpretation in common usage and understanding." *Sproles v. Binford*, 286 U.S. 374, 393 (1932). "Prevailing market price" is one such term. Indeed, one court has summarized "more than a century of unbroken usage of that phrase in every imaginable legal context," ranging from Supreme Court decisions to state laws. *United States v. Topouzian*, 2021 WL 5882204, at *4-9 (N.D. Ill. Dec. 13, 2021). The established pedigree of the phrase "prevailing market prices" reinforces the conclusion that it is sufficiently clear for Due Process Clause purposes.

\*     \*     \*

In sum, Section 4512's use of the terms "accumulate" and "prevailing market price" do not render it unconstitutionally vague.

### III. Conclusion

For the foregoing reasons, Bulloch's conviction is affirmed.

22

SO ORDERED.


_/s/ Eric Komitee_
ERIC KOMITEE
United States District Judge


Dated:    November 1, 2024
          Brooklyn, New York